**UNITED STATES BANKRUPTCY COURT**                    <u>**FOR PUBLICATION**</u>
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------x
In re:                                                                         Chapter 11

WP Realty Acquisition III LLC,                                      Case No. 20-23038 (SHL)

                                          Debtor.                    (Jointly Administered)
-----------------------------------------------------------------x
BGFI GP I LLC,

                                          Plaintiff,

                         v.                                                    Adv. No. 20-06528 (SHL)

D'Wayne Prieto, WP Realty Acquisition
III LLC, 188th St. Development LLC, and
Jonathan Sacks,

                                          Defendants.
-----------------------------------------------------------------x


### MODIFIED BENCH DECISION
### <u>DENYING MOTION FOR ABSTENTION AND REMAND</u>


**A P P E A R A N C E S :**

**FORCHELLI, CURTO, DEEGAN,**
**SCHWARTZ, MINEO & TERRAN**
*Attorneys for Plaintiff*
333 Earle Ovington Blvd., Suite 1010
Uniondale, NY 11553
By:     Raymond Anthony Castronovo

**GOLDBERG WEPRIN FINKEL**
**GOLDSTEIN LLP**
*Attorneys for Debtor*
1501 Broadway, 22nd Floor
New York, NY 10036
By:     Kevin J. Nash
            J. Ted Donovan


**SEAN H. LANE**
**UNITED STATES BANKRUPTCY JUDGE**

Before the Court is Plaintiff BGFI GP I LLC's ("Plaintiff") Motion for Abstention

Pursuant to 28 U.S.C. § 1134 (c)(1) and (2) and Remand Pursuant to 28 U.S.C. § 1452(b) [ECF

No. 6] ("Plaintiff's Motion"). Plaintiff contends that the Court should abstain from hearing the

above-captioned adversary proceeding and remand it to the Supreme Court of New York, County

of Westchester. For the reasons discussed below, Plaintiff's motion is denied.[1]

## **BACKGROUND**

This adversary proceeding arises out of a strategic relationship agreement ("SRA"),

dated May 18, 2016. The SRA is between the defendant D'Wayne Prieto, who is the current

Managing Member of Debtor WP Realty Acquisition III LLC, and Brad Gold, who is a non-

party and the principal owner of Plaintiff. *See* Complaint ¶¶ 9–20, 29 [ECF No. 1 at 10]

("Compl."); Declaration of Raymond A. Castronovo in Support of Motion at 2 [ECF No. 6-2]

("Castronovo Declaration"). The SRA relates to a personal loan by Gold of $100,000 in startup

capital for Prieto's new real estate venture. *See* Compl. ¶¶ 14–15. The SRA set out the terms of

Gold's investment in Prieto's venture and, under the SRA, the Debtor was formed to act as an

investment manager for Prieto's future real estate investments. *See* Compl. ¶¶ 38–39; Plaintiff's

Motion at 4. Under the SRA, Plaintiff is entitled to payment from Prieto and Debtor in the

amount of 25% of any profits realized by Prieto or Debtor in the development of any real

property. *See* Plaintiff's Motion at 4. In July 2018, Debtor purchased property at 115-117 Cedar

Street, New Rochelle, NY. *See* Compl. ¶¶ 75, 98. Plaintiff believes that this Cedar Street

property is the only property owned by Debtor, and no profit has yet been realized because the

real estate venture is at the early stages of development. Plaintiff's Motion at 5. On October 12,

---

[1]   This written decision memorializes a bench ruling by the Court. Because of its origins as a bench ruling, this decision has a more conversational tone. While the substance of the decision remains the same, edits have been made for ease of comprehension.

2018, the defendant Prieto and Debtor served a notice purporting to terminate the SRA, which

Plaintiff argues was without justification and thus not effective. *See* Castronovo Declaration at

5.

In June 2019, Gold started a state action seeking, *inter alia*, a declaratory judgment that

the SRA remains in full effect and is binding on Debtor. Plaintiff's Motion at 5. This action was

subsequently discontinued without prejudice at the direction of the state court. Plaintiff's Motion

at 6. At the end of March 2020, Gold assigned his rights under the SRA to Plaintiff. *See* Comp.

¶ 21; Plaintiff's Motion at 4. In July 2020, Plaintiff commenced this case in the Supreme Court

of New York, County of Westchester. Plaintiff's Motion at 6. In addition to seeking declaratory

relief, the complaint here contains causes of action for breach of contract, fraud, and accounting

against defendant Prieto and tortious interference with the SRA against the defendants Jonathan

Sacks and 188th St. Development LLC.[2] *See* Castronovo Declaration at 6. After learning of

alleged violations of the SRA, Plaintiff served written notice on Defendant Prieto and the Debtor

that it was replacing Prieto as manager of the Debtor—with itself—under the terms of the SRA.

*See* Compl. ¶ 125. The Debtor then filed for relief under Chapter 11 of the Bankruptcy Code on

September 11, 2020 and filed a notice of removal of this litigation from state court in early

October 2020. *See* ECF No. 1, Case No. 20-23038; Plaintiff's Motion at 6. Prior to removal of

this case from state court, discovery had been initiated and a referee appointed to oversee

discovery. *See* Plaintiff's Motion at 6.

---

[2]        Jonathan Sacks is the sole member of 188th St. Development LLC. Compl. ¶ 74. Months prior to serving
the notice purportedly terminating the SRA, Defendant Prieto and the Debtor allegedly entered into an amended
operating agreement with Defendant 188th St. Development, under which Prieto assigned 80% of his interest in the
Debtor to Defendant 188th St. Development. Compl. ¶¶ 75–76. Plaintiff argues that the Defendants Sacks and
188th St. Development knew or should have known about the SRA and nevertheless entered into this amended
operating agreement, among other things, without Plaintiff's knowledge or consent. *Id.* ¶¶ 78–90. Thus, Plaintiff
asserts, the amended operating agreement and the attempted assignment are of no force and effect. *Id.* ¶¶ 85–86.

Plaintiff seeks to have this case returned to state court. It argues that abstention is mandatory under 28 U.S.C. Section 1334(c)(2), or, in the alternative, that permissive abstention and equitable remand are justified under Sections 1334(c)(1) and 1452(b), respectively. *See* Plaintiff's Motion at 1.

## DISCUSSION

### I.    Mandatory Abstention

Generally speaking, 28 U.S.C. Section 1334(c)(2) requires federal courts to abstain from hearing non-core matters based on state law that relate to a Chapter 11 proceeding. Section 1334(c)(2) provides:

> Upon timely motion of a party in a proceeding based upon a State law claim or State law cause of action, related to a case under title 11 but not arising under title 11 or arising in a case under title 11, with respect to which an action could not have been commenced in a court of the United States absent jurisdiction under this section, the district court shall abstain from hearing such proceeding if an action is commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction.

28 U.S.C. § 1334(c)(2).

Mandatory abstention requires six conditions to be satisfied: (1) the abstention motion is timely, (2) the action is based on a state law claim, (3) the action is "related to" a bankruptcy proceeding but does not "arise under" the Bankruptcy Code, (4) federal bankruptcy jurisdiction is the sole basis of federal jurisdiction for the action, (5) the action was commenced in state court, and (6) the action can be timely adjudicated in state court. *See In re Residential Capital, LLC*, 519 B.R. 890, 902 (Bankr. S.D.N.Y. 2014); *In re Bradlees, Inc.*, 311 B.R. 29, 34 (Bankr. S.D.N.Y. 2004). The party opposing abstention bears the burden of showing that mandatory abstention is not warranted. *See Core Litigation Trust v. Apollo Global Management, LLC, et al. (In re AOG Entm't, Inc.)*, 569 B.R. 563, 573 (Bankr. S.D.N.Y. 2017).

4

The parties here only dispute the third and the sixth conditions required for mandatory abstention. As to those conditions, the Debtor argues that this action will affect its reorganization and thus is a core proceeding. The Debtor also contends that the matter cannot be timely adjudicated in state court. *See* Debtor's Memorandum of Law in Opposition to Plaintiff's Motion for Abstention or Remand at 8–14 [ECF No. 7] ("Debtor's Opposition").

A. Core vs. Non-Core

"[W]here a matter constitutes a core proceeding, the mandatory abstention provisions of section 1334(c)(2) are inapplicable." *In re Petrie Retail, Inc.*, 304 F.3d 223, 232 (2d Cir. 2002). To determine whether claims arising under a contract are core, courts consider "'whether the contract is antecedent to the reorganization petition' and 'the degree to which the proceeding is independent of the reorganization.'" *In re Relativity Fashion, LLC*, 696 F. App'x 26, 28 (2d Cir. 2017) (quoting *In re U.S. Lines, Inc.*, 197 F.3d 631, 637 (2d Cir. 1999)). "The latter inquiry turns on whether the proceeding is 'unique to or uniquely affected by the bankruptcy proceedings,' or 'affect[s] a core bankruptcy function.'" *Id.* at 28–29. The Second Circuit has opined that a dispute over a prepetition contract is core when it is bound to have a significant impact on the administration of the estate. *Id.* at 29 (quoting *In re U.S. Lines*, 197 F.3d at 638). The Second Circuit has ruled that "core proceedings should be given a broad interpretation that is close to or congruent with constitutional limits." *Id.* at 28 (quoting *In re U.S. Lines*, 197 F.3d at 637).

Plaintiff relies on *In re Orion Pictures Corp.*, 4 F.3d 1095, 1102 (2d Cir. 1993) for the proposition that a breach of contract action is a non-core proceeding when it is based on a pre-petition contract that is not the subject of a claim filed against the debtor's estate. *See* Plaintiff's Motion at 8. But this broad conclusion is at odds with two Second Circuit cases after *Orion*

5

*Pictures*: *In re U.S. Lines* and *In re Petrie Retail*.  In both cases, the Second Circuit determined that actions arising from pre-petition contracts can be deemed core if the parties' dispute impacts core bankruptcy functions such as the debtor's reorganization.  S*ee In re U.S. Lines, Inc.*, 197 F.3d at 638 (finding that pre-petition insurance contracts "may well be . . . 'the most important asset of [i.e., the debtor's] estate,'" and, therefore, "[n]otwithstanding that the Trust's claims are upon pre-petition contracts, we conclude that the impact these contracts have on other core bankruptcy functions nevertheless render the proceedings core"); *In re Petrie Retail*, 304 F.3d at 231.[3]  *See also In re Relativity Fashion*, 696 F. App'x at 29.

Applying these principles, the Court concludes that resolution of the dispute here would impact this reorganization and, therefore, that this proceeding is core.  Plaintiff argues that the state court action is independent of the bankruptcy because it only seeks a declaratory judgment that the SRA is binding on the Debtor and because any profits that Debtor would be required to pay Plaintiff under the SRA would not be realized until well after Debtor comes out of bankruptcy.  *See* Plaintiff's Motion at 9.  Plaintiff also insists that this case would have no impact on the Debtor because single asset companies like the Debtor are simply looking for investors, make no real management decisions, and a change in management would not impede Debtor's ability to pay its creditors.  But that is a simplistic and incomplete understanding of this case. This action involves not only the issue of future profits but also a dispute over the management of the Debtor.  *See* Compl. ¶¶ 125, 134, 173 (Plaintiff sent written notice to Defendant Prieto and

---

[3]      Plaintiff also argues that a rule based on the impact on a reorganization "would create an exception to *Marathon* that would swallow the rule."  Plaintiff's Motion at 9 (citing *In re Residential Capital, LLC*, 2015 WL 739829, at *6 (S.D.N.Y. Feb. 20, 2015)).  However, the court in *In re U.S. Lines* addressed this very distinction.  It noted that in *Orion Pictures*, 4 F.3d at 1102—the case upon which the holding in *Residential Capital* was based— "we concluded that where the insurance proceeds would only augment the assets of the estate for general distribution, the effect on the administration of the estate was insufficient to render the proceedings core," but "[r]esolving the disputes over the . . . policies here has a much more direct impact on the core administrative functions of the bankruptcy court."  *In re U.S. Lines*, 197 F.3d at 638.

the Debtor that it was replacing Defendant Prieto as manager of the Debtor with itself—and requested injunctive and declaratory relief to that effect—under the terms of the SRA.); Debtor's Opposition at 10–11. As Debtor asserts, this case affects "management rights and control over decisions of the Debtor relating to the Project, including the purported right of the Plaintiff to replace the manager of the Debtor, annul the Debtor's amended operating agreement, and transfer membership interests, all sought by Plaintiff." Debtor's Opposition at 10–11. At the hearing on this motion, Plaintiff conceded that it would make decisions for the Debtor were Plaintiff to prevail in this adversary proceeding.

At oral argument, Debtor made an evidentiary proffer of facts that demonstrate the point. Debtor clarified that in recent weeks its current management was in the advanced stages of forming a deal with the Hard Rock Hotel, in which Hard Rock would partner with Debtor in a hotel development on the Cedar Street property. Debtor explained that the development of this deal was spearheaded by the current management and based on their experience and the relationships they had developed with Hard Rock. Debtor added that to change management now could endanger financing as lenders could lose confidence in the Debtor and refuse to finance the deal. The Plaintiff did not challenge any of the facts in Debtor's proffer.

The conclusion that this adversary proceeding is core is supported by two cases cited by the Debtor: *In re Johns-Mansville Corp.*, 801 F.2d 60 (2d Cir. 1986) and *Bank of Am., NT&SA v. Nickele*, 1998 WL 181827 (E.D. Pa. Apr. 16, 1998). In both cases, the courts determined that the effects of the state court actions on the management of the respective debtors were core to the bankruptcies as they affected the administration of the debtors' estates. The state action in *In re Johns-Mansville* stemmed from a dispute between shareholders of the debtor as to how to compensate asbestos victims; after a plan was reached, a competing group of shareholders sought

to compel a shareholders meeting so that new directors could reconsider the proposed plan.  801 F.2d at 62–63.  The bankruptcy court determined that holding the shareholders meeting would obstruct the debtor's reorganization and, therefore, enjoined the state action.  *Id.* at 63.  In determining whether the bankruptcy court had jurisdiction to enjoin this state court action seeking to compel the debtor to hold a shareholders meeting, the Second Circuit concluded that the motion to enjoin was a core proceeding as it "concern[d] the administration of the estate" and because "there [was] a basis for concluding that rehabilitation, the very purpose for the bankruptcy proceedings, might be undone by the other action."  *Id.* at 64.

*Nickele* involved a representative of the debtor's lenders, Bank of America, seeking an injunction in state court preventing the defendants from taking any action on behalf of the debtor.  The court held that "actions to obtain control of a debtor-in-possession '[go] to the very heart of the administration of the debtor's estate . . .' and, therefore, are core proceedings."  *Nickele*, 1998 WL 181827, at *4 (quoting *In re SCK Corp.*, 54 B.R. 165, 169 (Bankr. D. N.J. 1984)).  Indeed, the court also found that the case "f[ell] even further within the core of federal bankruptcy power because Bank of America and the lenders it represents are creditors of . . . the debtor it seeks to control, " and the case "affect[ed] the debtor-creditor relationship because the agent of the creditors seeks to position itself as the sole director of the debtor, doubtlessly altering the nature of the debtor-creditor association."  *Id.*  The same is true here.

The facts here, particularly as fleshed out by the Debtor at oral argument, fall squarely in line with those of both *Johns-Mansville* and *Nickele*.  Even in single asset real estate cases such as this one, control of the debtor can be key to the vision for and use of the property, which is how value is created.  Accordingly, as changes in control of the Debtor would have a direct

8

impact on the bankruptcy case here, the Court finds that this action is a core proceeding and that abstention is not mandatory.

B.  Timely Adjudication

The parties also dispute whether this action can be timely adjudicated in state court.  As the Court finds that mandatory abstention is not warranted because this adversary proceeding is a core proceeding, the Court will only briefly address the parties' timeliness arguments.

The Second Circuit evaluates four factors when considering timeliness:

> (1) the backlog of the state court's calendar relative to the federal court's calendar; (2) the complexity of the issues presented and the respective expertise of each forum; (3) the status of the title 11 bankruptcy proceeding to which the state law claims are related; and (4) whether the state court proceeding would prolong the administration or liquidation of the estate.

*Parmalat Capital Finance Ltd. v. Bank of America Corp.*, 639 F.3d 572, 580 (2d Cir. 2011).

As to the first two factors, the parties primarily dispute how far along the state court action is in the pleading and discovery process and raise unsubstantiated assertions as to the time it will take each respective court to resolve the matter.  In any event, when analyzing timely adjudication, "courts [generally] focus on the status and needs of the bankruptcy case rather than any particular time guideline."  *In re New 118th LLC*, 396 B.R. 885, 894 (Bankr. S.D.N.Y. 2008) (citing *In re Bradlees, Inc.*, 2005 WL 106794, at *7 (S.D.N.Y. Jan.19, 2005)).  Where—as here—a Chapter 11 reorganization is pending and there is "administrative urgency or [a] plan of reorganization to facilitate," "the court must be sensitive to the needs of the debtor attempting to reorganize." *Id.* (quoting *World Solar Corp. v. Steinbaum (In re World Solar Corp.)*, 81 B.R. 603, 612 (Bankr. S.D.Cal. 1988)).

Applying these principles here, the Court finds that the timeliness factors do not support mandatory abstention because the state law claims directly impact the bankruptcy estate, these

claims may need to be resolved quickly because of the ongoing bankruptcy proceeding, and resolution of these claims could potentially prolong the administration of the bankruptcy case. *See Parmalat*, 639 F.3d at 581.

## II.  Permissive Abstention and Equitable Remand

The Court turns now to the movant's two alternative theories for relief.  The first is permissive abstention based on Section 1334(c)(1).  That section provides that "nothing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11."  28 U.S.C. § 1334(c)(1).  Courts in this district typically consider one or more of twelve factors in determining whether to abstain from hearing a state court proceeding under Section 1334(c)(1):

> (1) the effect or lack thereof on the efficient administration of the estate if a Court recommends abstention, (2) the extent to which state law issues predominate over bankruptcy issues, (3) the difficulty or unsettled nature of the applicable state law, (4) the presence of a related proceeding commenced in state court or other nonbankruptcy court, (5) the jurisdictional basis, if any, other than 28 U.S.C. § 1334, (6) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case, (7) the substance rather than form of an asserted "core" proceeding, (8) the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court, (9) the burden [on] the court's docket, (10) the likelihood that the commencement of the proceeding in a bankruptcy court involves forum shopping by one of the parties, (11) the existence of a right to a jury trial, and (12) the presence in the proceeding of nondebtor parties."

*In re WorldCom, Inc. Sec. Litig.*, 293 B.R. 308, 332 (S.D.N.Y. 2003).

Because federal courts have an obligation to exercise the jurisdiction properly given to them, "there is a presumption in favor of the exercise of federal jurisdiction and against abstention."  *Rahl v. Bande*, 316 B.R. 127, 135 (S.D.N.Y. 2004).  Thus, "[t]he movant bears the burden of establishing that permissive abstention is warranted."  *In re Residential Capital, LLC*, 515 B.R. 52, 67 (Bankr. S.D.N.Y. 2014).

The second theory is equitable remand under 28 U.S.C. Section 1452(b). That section
provides that any court to which a claim is removed under Section 1334 may remand that claim
on any equitable ground. 28 U.S.C. § 1452(b). The factors considered in deciding whether to
equitably remand under Section 1452(b) are substantially similar to those considered when
deciding whether to permissively abstain under Section 1334(c)(1). *Rahl*, 316 B.R. at 135.
Additional factors often considered in the context of equitable remand include comity with state
courts, prejudice to the involuntarily removed parties, and the potential for duplicative use of
judicial resources. *See, e.g.*, *Kerusa Co. LLC v. W10Z/515 Real Estate Ltd. P'ship*, 2004 WL
1048239, at *3 (S.D.N.Y. May 7, 2004); *CAMOFI Master LDC v. U.S. Coal Corp.*, 527 B.R.
138, 143 (Bankr. S.D.N.Y. 2015); *In re River Ctr. Holdings, LLC*, 288 B.R. 59, 68 (Bankr.
S.D.N.Y. 2003).

Plaintiff primarily argues that Debtor removed this proceeding "for the sole purpose of
forum shopping, the action can be promptly resolved in state court without delaying the
bankruptcy proceeding, only state law issues are involved, and there is no reason to burden the
Court with this action with which the state court is already familiar." Plaintiff's Motion at 13.
Plaintiff further contends that because the case involves non-debtor defendants, whose consent
the Court will need in order to enter final judgment, the Court's ability to render full and
complete relief on all causes of action with be hindered. *Id.* at 14, 15. Additionally, Plaintiff
contends that its right to a jury trial and the fact that it would be prejudiced were it to have to
relitigate ongoing discovery issues in this Court are further reasons for this Court to abstain. *Id.*
at 13, 16.

Plaintiff relies on *In re Laurel Highlands Foundation, Inc.*, 473 B.R. 641 (Bankr. W.D.
Pa. 2012). Plaintiff contends that *Laurel Highlands* supports its assertion that ownership issues

have a nominal effect on the bankruptcy, particularly when the case involves private parties

fighting over ownership of the debtor.  Similar to its arguments discussed above, Plaintiff argues

that the instant case involves a single asset company with no payroll and no real management

decisions to carry out—rather, it is just a piece of property looking for an investor and, thus,

seems to aver that the same decisions would be made regardless of who is managing the Debtor.

Additionally, Plaintiff contends that Debtor is fully solvent, that nearly all of the creditors listed

in the bankruptcy filings do not have legitimate claims, and that the sole purpose behind the

bankruptcy is to obtain leverage in the state court action to protect the controlling members'

personal interests.  *See* Plaintiff's Reply Memorandum of Law in Further Support of Motion to

Abstain and Remand at 7 [ECF No. 9] (discussing *In re Laurel Highlands*, 473 B.R. at 647).

But the Court disagrees.  The court in *Laurel Highlands* addressed two broad issues

relevant here: (1) whether to dismiss the bankruptcy case and, alternatively, (2) whether

mandatory or permissive abstention and remand were warranted.  473 B.R at 653–62.  The

debtor there was a nonprofit offering services to individuals with intellectual disabilities and

other mental health needs.  *Id.* at 646.  Members of the debtor, along with another nonprofit that

offered similar services, were competing with the debtor's board of directors for control of the

organization.  *Id.* at 646-47.  After the two sides could not reach an agreement, both essentially

assumed control and began taking inconsistent actions on behalf of the debtor.  *Id.* at 647.  The

debtor, through its board of directors, then sued in state court for declaratory relief as to control

of the debtor arguing, *inter alia*, that a change in control would "ultimately threaten[ ] the level

of care provided by [the debtor]."  *Id.* at 647–48.  On the very day that the state court judge was

set to issue his decision on a renewed motion for a preliminary injunction filed by the competing

members of the debtor, the debtor filed for bankruptcy and sought removal.  *Id.* at 648.

As to dismissal, the bankruptcy court found that the debtor initiated the bankruptcy in bad faith as a litigation tactic to avoid an imminent and potentially negative outcome in state court. *Id.* at 655, 658. Through fact and expert testimony, the court determined that the debtor was financially healthy and solvent. *Id.* at 656–57. As the state court litigation "did not impose the threat of a massive judgment," but rather would decide which party had authority to act on behalf of the debtor, the court ruled that there was no valid bankruptcy purpose. *Id.* The court reasoned that the potential acquisition of the debtor by the competing nonprofit was a business decision and not a financial threat to the debtor's survival. *Id.* at 657. The court ultimately held that these "extraordinary circumstances" warranted dismissal. *Id.* at 658. Although moot, the court went on to discuss mandatory and permissive abstention in light of the findings above.

In its discussion of mandatory abstention, and relevant to its permissive abstention analysis, the court found that the state court action was non-core as it "involve[d] purely issues of [state] law[,] . . . proceeded in state court for over nine months prior to the bankruptcy case," and "neither invoke[d] a substantive right provided by the Bankruptcy Code nor ar[ose] solely in the context of a bankruptcy case." *Id.* at 660. In addition to its findings above, the court held that permissive abstention was warranted based also on the facts that the state action involved unique questions of state law, the non-debtor asserted its right to a jury trial, the defendants were both non-debtors, and the debtor chose the state forum only to later remove the action just prior to an imminent decision in state court, indicative of forum shopping. *Id.* at 661.

As this recitation makes clear, *Laurel Highlands* is distinguishable from the instant case on several key points. First, this case involves a single asset realty company for which control of the company can uniquely affect the creation of value in the debtor's estate. This is amply demonstrated by the factual proffer provided by the Debtor. In that proffer, the Debtor

represented that the deal being negotiated by Debtor's current management with the Hard Rock is at a vital stage, making the issue of control of the debtor of vital concern to the reorganization. Second, this Court has not been presented with any facts or testimony showing that Debtor filed this bankruptcy in bad faith to avoid an imminent and adverse state court decision. *See Laurel Highlands*, 473 B.R. at 651. The adversary proceeding here is at a relatively early stage, which stands in contrast to the fully matured state court record in *Laurel Highlands*. While Plaintiff conclusory alleges that Debtor removed this case in order to avoid being penalized by the discovery referee in state court, there have been insufficient facts presented here to support a conclusion of bad faith. *See* Castronovo Declaration ¶¶ 45–48. Third, in *Laurel Highlands*, the court found that it would be inefficient to retain the removed action because the state court had done extensive work on the case, including issuing a detailed decision and order and scheduling a trial set to begin in approximately two months' time. 473 B.R. at 654 & n.5, 660, 661. That is not true here as the adversary proceeding remains at the discovery stage. Indeed, it was only pending in state court for three months before removal. There was no decision of the state court on the horizon before removal and no trial date has been scheduled. Fourth, although state law issues predominate here, this is a "modest factor," as bankruptcy judges "address matters of state law on a regular basis." *In re Adelphia Commc'ns Corp.*, 285 B.R. 127, 145 (Bankr. S.D.N.Y. 2002). Indeed, in *Adelphia*, the court found no material difference in the ability of the state and federal courts to decide issues of contract law. *Id.* at 146. Neither party here contends that this case presents unique questions of state law, unlike the not-for-profit laws implicated in *Laurel Highlands*. Fifth, the Debtor here did not choose the state forum, but rather, as is often the case, sought to have the case removed and consolidated with its own pending bankruptcy.

14

The balance of the remaining factors raised by Plaintiff do not tip the scales in its favor. The right to a jury trial, "tilts in favor of remand, but to only a very minor extent." *Id.* at 147. Moreover, Plaintiff's claims here "reasonably can be expected to be for equitable relief, for which there is no right to a jury trial in any event." *Id.* Additionally, this factor "is tempered substantially by the fact that [Plaintiff]'s claims could be heard, if necessary, by a district judge." *Id.* Finally, Plaintiff has failed to sufficiently articulate prejudice that favors remand. Plaintiff contends only that it would be forced to relitigate some discovery issues. *See* Plaintiff's Motion at 16. But this concern does not outweigh the factors discussed above.

Accordingly, this case does not present one of the "limited circumstances" in which the Court will grant permissive abstention or equitable remand. *See Laurel Highlands*, 473 B.R. at 661.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for abstention under 28 U.S.C. Sections 1134 (c)(1) and (2) and remand under 28 U.S.C. Section 1452(b) is denied.

Dated: March 30, 2021
     New York, New York


          */s/ Sean H. Lane*
          UNITED STATES BANKRUPTCY JUDGE